UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SCARBOROUGH CITIZENS )
PROTECTING RESOURCES, et al., )
 )
    *Plaintiffs* )
 )
v. ) No. 2:10-cv-315-DBH
 )
UNITED STATES FISH AND )
WILDLIFE SERVICE, et al., )
 )
    *Defendants* )

*RECOMMENDED DECISION ON DEFENDANTS' MOTIONS TO DISMISS*

Defendants Paul LePage, governor of the State of Maine, Joel Wilkinson, the acting commissioner of the Maine Department of Inland Fisheries and Wildlife, and Darryl Brown, Commissioner of the Maine Department of Environmental Protection[1] (the "state defendants"), move to dismiss the claims asserted against them in this action concerning a segment of the Eastern Trail located in Scarborough, Maine, and arising under the Pittman-Robertson Wildlife Restoration Act of 1937. The remaining defendants, The United States Fish and Wildlife Service and Marvin Moriarty, its regional director (the "federal defendants"), move to dismiss the claims asserted against them. The complaint seeks declaratory and injunctive relief. I recommend that the court grant the motions.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), I have changed the names of the state defendants, who were sued only in their official capacities, to those of the current officeholders.

1

## I. Applicable Legal Standard

The motions to dismiss invoke Fed. R. Civ. P. 12(b)(6). State Defendants' Motion to Dismiss ("State Motion") (Docket No. 6) at 1; Motion to Dismiss ("Federal Motion") (Docket No. 9) at 1-2.[2]

With respect to Rule 12(b)(6), as the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[3]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

---

[2] The federal defendants do not specify the subsection of Rule 12 upon which their motion is based, but Rule 12(b)(6) is most likely, given the tenor of their arguments.

[3] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

## II. Factual Background

The complaint includes the following relevant factual allegations.

The Eastern Trail in Scarborough, Maine, is a former railroad line that has been converted into a public recreational trail that is part of a connected system of public trails that extends the length of the Atlantic seaboard. Complaint for Injunctive and Declaratory Relief (Docket No. 1) ¶ 1. It is part of the Scarborough Marsh Wildlife Management Area. *Id.* This section of the Eastern Trail was purchased with funds acquired under the Pittman-Robertson Wildlife Restoration Act of 1937 (the "PR Act"). *Id.* ¶ 2.

Plaintiff Scarborough Citizens Protecting Resources ("SCPR") is an unincorporated association of area residents who have regularly used the Eastern Trail and intend to continue using it in the future. *Id.* ¶ 6. Plaintiff David T. Paul resides in Scarborough and is a member of SCPR. *Id.* ¶ 7. Plaintiff Paul Austin is a resident of Scarborough and a member of SCPR. *Id.* ¶ 8. Plaintiff Susan DeWitt Wilder is a resident of Scarborough and a member of SCPR. *Id.* ¶ 9.

Defendant United States Fish and Wildlife Service ("USFWS") is the federal agency charged with overseeing and managing Pittman-Robertson monies and ensuring that states use those funds solely for wildlife and conservation purposes. *Id.* ¶ 10. Defendant Marvin Moriarty is the northeast regional director for the USFWS, responsible for implementing the PR Act in the northeastern states, including Maine. *Id.* ¶ 11.

Defendant Paul LePage is the governor of Maine.[4] *Id.* ¶ 12. The remaining state defendants are the commissioners of the Departments of Inland Fish and Wildlife and Environmental Protection. *Id.* ¶¶ 13-14.

---

[4] Pursuant to Fed. R. Civ. P. 25(d), I have substituted the name of the current governor for that of John E. Baldacci, who was governor at the time when the complaint was filed.

The PR Act benefits wildlife and the public by ensuring that money spent to purchase state hunting licenses and the federal excise taxes paid on the purchase of hunting and recreational equipment is used solely for wildlife conservation and public recreation. *Id*. ¶ 15. Money available under the PR Act may be distributed via state matching grants funded by federal excise taxes and used solely for wildlife purposes, on the condition that the state prohibits the use of revenue from state hunting and fishing licenses for any purpose other than the administration of the state fish and wildlife agency. *Id*. Wildlife purposes may include purchase of land or water for the protection and conservation of wildlife and habitat and for public use of wildlife resources. *Id*. ¶ 16. If property so acquired is used in a way that interferes with approved purposes, the violating activity must cease and any resulting adverse effects must be remedied. *Id*. ¶ 17.

A state agency can convey or encumber property so acquired only upon determination that the property is no longer useful for its original purpose, prior approval by the USFWS regional director, and replacement using non-federal funds not derived from sale of licenses with property of equal value and benefits as the original property or reimbursement to the granting agency of the current full market value of the interest conveyed. *Id*. ¶ 18. A state may have up to three years from the date of notification by the regional director to acquire replacement property; if it does not do so, it will become ineligible for federal aid funds. *Id*. ¶ 19. Under the National Environmental Policy Act, before approving the disposal of PR property, USFWS must determine whether the action will significantly affect the quality of the human environment. *Id*. ¶ 22.

Under Maine law, the Scarborough March Wildlife Management Area, including the Eastern Trail property, is classified as a state wildlife management area. *Id*. ¶ 24. The essential

purposes of state wildlife management areas are the protection, management and improvement of these properties for fish and wildlife habitat and propagation, hunting, trapping, fishing, recreation, propagation and harvesting of forest and other natural products. *Id*. ¶ 27.

Various easements on portions of the property that is now the Eastern Trail were granted between its acquisition in 1961 and 2005. *Id*. ¶¶ 28-42. With the exception of the 1962 transaction, the regional director has not approved any of these transactions. *Id*. ¶ 47. With the exception of the transactions in 1962 and 2002, the state department has not obtained replacement property that has equal market and wildlife value as the interests conveyed, nor has it compensated the original granting agency for the current market value of those interests. *Id*. ¶ 48.

On or about June 2, 1980, the commissioner of the state department conveyed to the Town of Scarborough an easement on all of the Eastern Trail property extending northeast of Black Point Road (1,510 feet) for vehicle and pedestrian access, to build a road to be used as a town way. *Id*. ¶ 34. The town thereafter constructed a public roadway on that portion of the Eastern Trail and accepted it as a public street named Eastern Road. *Id*. ¶ 63. These actions violated the PR Act, as the plaintiffs informed the state department in 2008. *Id*. ¶ 64.

The commissioner of the state department on or about August 18, 2005, conveyed an easement to Ballantyne Development, LLC, on that portion of the Eastern Trail extending from Black Point Road for 766 feet in a southwesterly direction for the purpose of vehicle access to a proposed 51-acre mixed use development. *Id*. ¶ 73. This action violated the PR Act, state law, The National Environmental Policy Act, and a 2003 agreement pursuant to which the state department agreed to limit that portion of the Eastern Trail to pedestrian and non-motorized access only. *Id*. ¶¶ 72, 74-78, 81-87.

### III. Discussion

The complaint includes five claims for relief, four of which are asserted against the federal defendants and all of which are asserted against the state defendants: violation of 50 C.F.R. §§ 80.4(d) and 80.14(b)(1) ("First Claim"), Complaint for Injunctive and Declaratory Relief ("Complaint") (Docket No. 1) ¶¶ 60-66; violation of 50 C.F.R. § 80-14(b)(3) ("Second Claim"), *id*. ¶¶ 67-70; violation of 5 M.R.S.A. § 598-A and Maine DEP rules ("Third Claim"), asserted only against the state defendants, *id*. ¶¶ 71-78; violation of 50 C.F.R. § 80.14(b)(2) ("Fourth Claim"), *id*. ¶¶ 79-87; and violation of the National Environmental Policy Act ("Fifth Claim"), *id*. ¶¶ 88-89.

The plaintiffs have agreed to dismissal of the claims against the state defendants that are asserted in the First, Second, and Fourth Claims. Plaintiffs' Consolidated Memorandum in Opposition to the Federal and State Defendants' Motions to Dismiss ("Opposition") (Docket No. 12) at 1. Those claims against LePage, Wilkinson, and Brown accordingly should be dismissed. I will not address them further.

### A. Private Right of Action

The federal defendants first contend that there is no private right of action under the PR Act and its regulations. Motion to Dismiss ("Federal Motion") (Docket No. 9) at 8-9. The First, Second, and Fourth Claims that are asserted against them are based on these regulations. The sole support cited for the federal defendants' contention is *Illinois State Rifle Ass'n v. State*, 717 F. Supp. 634 (N.D. Ill. 1989).

But, no other court has followed the lead of the *Illinois Rifle* court in a reported decision. Instead, on the rare occasions when a PR Act claim is brought, the courts involved have allowed the cases to proceed as if brought under the federal Administrative Procedures Act ("APA"). *See*

6

*Sierra Club v. United States Fish & Wildlife Serv.*, 189 F.Supp.2d 684, 691 (W.D. Mich. 2002), and cases cited therein. The complaint in the instant action does cite to the APA, if only in passing, Complaint ¶¶ 66, 70, 87, and the analysis will proceed on that basis.

### B. First, Second, and Fourth Claims

The federal defendants' next argument is that the complaint alleges no "discrete" action that they were "required" to take, citing the test from *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004), Federal Motion at 10, in which the Supreme Court construed 5 U.S.C. § 706(1), which is the section of the APA cited in the complaint.

The complaint does allege that the federal defendants had an "absolute mandatory duty" to "notify the State of Maine that it will become ineligible from participating in the PR Wildlife Restoration Grant Program within three years unless the state regains full management control of the entire Eastern Tail or provides replacement property," Complaint ¶ 65 (First Claim); to "prevent the State of Maine from participating in the PR Wildlife Restoration Grant Program until the state provides replacement property . . . or compensates the awarding agency for the current fair market value of each interest in PR property that has been disposed of by the state" in transfers from 1968 through 2002, *id*. ¶ 69 (Second Claim); and to "prevent the State of Maine from participating in the PR Wildlife Restoration Grant Program until the state provides replacement property . . . or compensates the awarding agency for the current fair market value of each interest in PR property that has been disposed of by the state" in a 2005 transfer, *id*. ¶ 86 (Fourth Claim).

The federal defendants assert that "courts have unanimously rejected the idea of any such 'absolute mandatory duty[,]'" Federal Motion at 11, citing *Sportsmen's Wildlife Defense Fund v. United States Dep't of the Interior,* 40 F.Supp.2d 1192, 1200 (D. Colo. 1999) ("*Sportsmen's* II");

7

*Sportsmen's Wildlife Defense Fund v. Romer*, 29 F.Supp.2d 1199, 1212 (D. Colo. 1998) ("*Sportsmen's* I"), where the one judge who ruled in the two cases that they cite has done so.

The plaintiffs attempt to distinguish these decisions by pointing out that the court in those cases construed only the regulation, 50 C.F.R. § 80.4(d), and "the regulation cannot supersede the statute[,]" specifically, 16 U.S.C. § 669e(a)(2). Opposition at 12. The cited statute provides, in relevant part:

> The Secretary of the Interior shall approve only such comprehensive plans or projects as may be substantial in character and design and the expenditure of funds hereby authorized shall be applied only to such approved comprehensive wildlife plans or projects and if otherwise applied they shall be replaced by the State before it may participate in any further apportionment under this chapter. No payment of any money apportioned under this chapter shall be made on any comprehensive wildlife plan or project until an agreement to participate therein shall have been submitted to and approved by the Secretary of the Interior.

16 U.S.C. § 669e(a)(2).

The cited portion of the regulation provides:

> If a diversion of license revenues occurs, the State becomes ineligible to participate under the pertinent Act from the date the diversion is declared by the Director until:
> (1) Adequate legislative prohibitions are in place to prevent diversion of license revenue, and
> (2) All license revenues or assets acquired with license revenues are restored, or an amount equal to license revenue diverted or current market value of assets diverted (whichever is greater) is returned and properly available for use for the administration of the State fish and wildlife agency.

50 C.F.R. § 80.4(d).

Also mentioned in the Colorado court's opinions is 50 C.F.R. § 80.14(c), which provides:

> Wildlife and Sport Fish Restoration Program funds cannot be used for the purpose of producing income. However, income-producing activities incidental to accomplishment of approved purposes are allowable. Income

> derived from such activities must be accounted for in the project records and disposed of as directed by the [Regional] Director.

The plaintiffs' general premise is correct; a regulation cannot "overcome" a statutory mandate. The problem for the plaintiffs here is that the statute upon which they rely does not provide the "clear and unambiguous . . . mandate" that they purport to find in it. Opposition at 13.

In the two *Sportsmen's* cases, no party argued, as the plaintiffs apparently do now, that the regulations at issue were at odds with the statute they were promulgated to implement. Lost in the parties' presentation of their positions is the fact that the complaint, however indulgently read, does not allege a violation of the PR Act, but only violations of its implementing regulations. I doubt, therefore, that the plaintiffs can rely on what they assert for the first time in their opposition to the motions to dismiss is the mandatory language of the Act itself. For this reason alone, the federal defendants appear to be entitled to dismissal of the First, Second, and Fourth Claims.

In the alternative, if the complaint may in fact be read to include an allegation of violation of the PR Act, I would begin by noting that I find Judge Babcock's analysis of the regulations in the *Sportsmen's* cases persuasive. In order to prevail on their assertion that the regulations, so construed, violate the "clear and unambiguous" mandate of the statute – *i.e.*, that the statute prohibits the exercise of discretion by the federal defendants – the plaintiffs must overcome the basic legal precept that a governmental agency's creation of implementing regulations is entitled to deference from the courts. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

The First Circuit has provided explicit guidance with respect to the application of *Chevron*:

> *Chevron* requires us to conduct a two-part inquiry. As we have explained in *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005):
>
>> We first ask whether Congress has directly spoken to the precise question at issue. If so, courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. As the Supreme Court said in the immigration context:
>>
>>> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.
>>
>> *INS v. Cardoza-Fonseca*, 480 U.S. [421,] 447-48, 107 S.Ct. 1207, 94 L.Ed.2d 434 [1987] (quoting *Chevron USA[,] Inc.*, 467 U.S. at 843 n.9, 104 S.Ct. 2778) (internal quotation marks omitted). *Chevron* deference to an agency's statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.
>>
>> In determining whether a statute exhibits *Chevron*-type ambiguity, and hence warrants deference to the agency's interpretation of the statute, courts look at both the most natural reading of the language and the consistency of the interpretive clues Congress provided. In determining the meaning of a statute, our analysis begins with the language of the statute. We construe language in its context and in light of the terms surrounding it. Another regular interpretive method is reference to statutory history to see if any serious question even about purely textual ambiguity is left.
>
> If, *after* applying these interpretive tools, we conclude that the statute is ambiguous, we turn to the second question, specifically, whether the agency's answer is based on a permissible construction of the statute. In applying the second step, we must defer to an agency's interpretive regulation unless it is arbitrary, capricious, or manifestly contrary to the statute.

*Saysana v. Gillen*, 590 F.3d 7, 12-13 (1st Cir. 2009) (emphasis in original) (most citations and internal punctuation omitted).

The plaintiffs contend that the words "if otherwise applied they shall be replaced by the State before it may participate in any further apportionment under this chapter" create the "absolute, unconditional, and mandatory remedy" of the statute and are unambiguous. Opposition at 9-10. The federal defendants assert that the *Sportsmen's* court found that the PR Act "contains no guidance concerning when or if a diversion must be declar[]ed," Federal Motion at 12, but that is a mischaracterization of the opinion. The quoted language refers only to the implementing regulations and, in any case, what is at issue here is the term "otherwise applied" in the statute rather than "a diversion" in the regulation.

That being said, the language, or lack thereof, in the regulation that Judge Babcock found to indicate that regional directors employed by the Department of the Interior retained discretion in implementing the Act is quite similar to the statutory language, or lack thereof. The regulatory text at issue in the Colorado cases, *Sportsmen's* I, 29 F.Supp.2d at 1212; *Sportsmen's* II, 40 F.Supp.2d at 1197, was the following:

> Revenues from license fees paid by hunters and fishermen shall not be diverted to purposes other than administration of the State fish and wildlife agency.
> \* \* \*
> (d)  If a diversion of license revenues occurs, the State becomes ineligible to participate under the pertinent Act from the date the diversion is declared by the Director until:
>
>    (1)  Adequate legislative prohibitions are in place to prevent diversion of license revenue, and
>    (2) All license revenues or assets acquired with license revenues are restored, or an amount equal to license revenue diverted or current market value of assets diverted (whichever is greater) is returned and properly available for use for the administration of the State fish and wildlife agency.

50 C.F.R. § 80.4.

> Wildlife and Sport Fish Restoration Program funds cannot be used for the purpose of producing income. However, income-producing activities

> incidental to accomplishment of approved purposes are allowable. Income derived from such activities must be accounted for in the project records and disposed of as directed by the Director.

50 C.F.R. § 80-14(c).

The initial sentences of each of these regulations is neither more nor less "absolute" and "mandatory" than the sentence of the statute on which the plaintiffs base their argument, Opposition at 9:

> The Secretary of the Interior shall approve only such comprehensive plans or projects as may be substantial in character and design and the expenditure of funds hereby authorized shall be applied only to such approved comprehensive wildlife plans or projects and if otherwise applied they shall be replaced by the State before it may participate in any further apportionment under this chapter.

16 U.S.C. § 669e(a)(2).

If, as Judge Babcock found, the language of the regulations "is silent . . . with respect to the actions the USFWS may or must take in response to the misuse" of PR Act funds, and the regulations "contain[] no guidance concerning when or if a diversion [of PR Act funds] must be declared," *Sportsmen's* I, 29 F.Supp.2d at 1212, the same must be said of the statutory language, which contains no guidance as to by whom, when, or by what standards a determination that PR Act funds have been "otherwise applied" is to be made.

Accordingly, I conclude that the operative section of the PR Act, as invoked by the plaintiffs, does not set forth a discrete action that the federal defendants were required to take, and, therefore, under the *Norton* test, the federal defendants are entitled to dismissal of the First, Second, and Fourth Claims.

### C. The Fifth Claim

The Fifth Claim of the complaint, asserted against both the state and the federal defendants, alleges violation of the National Environmental Policy Act ("NEPA"). Complaint

¶¶ 88-89.[5] The federal defendants contend that the complaint fails to allege a "major federal action," and that such an allegation is a prerequisite of a NEPA claim. Federal Motion at 14. The state defendants join in this argument. State Defendants' Motion to Dismiss ("State Motion") (Docket No. 6) at 14-15.

The federal defendants assert that the complaint fails to allege any "major action" by them, observing that the only alleged conveyance that is the subject of this claim was made by the state defendants. Federal Motion at 14-15. The state defendants reiterate this argument, but also apparently contend, in the sketchiest of terms, that NEPA does not apply to state actors. State Motion at 14-15. However, the term "major action" is defined at 40 C.F.R. § 1508.18 to include alleged failures to act that are reviewable by courts under the APA as agency action, and that definition is applicable here.

The Fifth Claim alleges only that the conveyance of an easement by the then-commissioner of the state Department of Inland Fisheries and Wildlife in 2005 to Ballantyne Development LLC violated NEPA. Complaint ¶¶ 42, 89. The plaintiffs argue that the federal defendants are liable as "partners" of the state defendants in the challenged conveyance, citing *Zarrilli v. Weld*, 875 F. Supp. 68, 71 (D. Mass. 1995). Opposition at 23. However, in that case as well as all of the others cited by the plaintiffs, the issue was whether state-government defendants could be held liable under NEPA as partners of the federal government defendants, not the reverse. *Id.* at 71; *Silva v. Romney*, 473 F.2d 287, 290-91 (1st Cir. 1973); *Aertsen v. Harris*, 467 F. Supp. 117, 120-21 (D. Mass. 1979); *Funds for Animals, Inc. v. Lujan*, 962 F.2d

---

[5] The federal defendants also argue that there is no private right of action under NEPA. Federal Motion at 14. My analysis of the same argument made in connection with the First, Second, and Fourth Claims applies to this argument as well. The complaint does not invoke the federal Administrative Procedure Act in connection with this count, but, because the federal defendants' argument assumes that this claim is "APA-based," *id.*, I will do so as well. NEPA claims may be brought through the APA. *Utah Envtl. Congress v. Bosworth*, 443 F.3d 732, 739 (10th Cir. 2006); *Sierra Club v. Slater*, 120 F.3d 623, 630-31 (6th Cir. 1997).

1391, 1397 (9th Cir. 1992); *Proetta v. Dent*, 484 F.2d 1146, 1148 (2d Cir. 1973); *Sierra Club v. USFWS*, 235 F.Supp.2d 1109, 1142 (D. Or. 2002).[6] If the state government defendants cannot be independently liable under NEPA, as is readily apparent from the language of the statute on its face, 42 U.S.C. § 4332, how can they be held liable as partners of the federal government defendants when those defendants did not take the challenged action and thereby render the federal defendants liable as well? The plaintiffs' attempted use of the cited case law turns it on its head.

On the showing made, the federal defendants are entitled to dismissal of the Fifth Claim.

With respect to the state defendants, the plaintiffs seek relief that does not appear to be available under NEPA. The relief sought in the complaint that may possibly be related to the 2005 conveyance that is the sole basis for the Fifth Claim is the following: a declaration that the 2005 easement is null and void; an injunction barring Brown from "upholding the Site Law of Development Act permit authorizing Ballantyne Development, LLC to construct a public street on a portion of the Eastern Trail"[7] or, in the alternative, ordering all of the state defendants to "ceas[e] activities that interfere with the Eastern Trial's approved purposes and remedy[] any adverse effects, and . . . provid[e] adequate replacement property . . . or compensat[e] the original granting agency with the current market value of the interests unlawfully conveyed in the Ballantyne easement"; and an award of costs of suit and attorney fees. Complaint at 25-27.

In response to the state defendants' assertion that NEPA provides no substantive remedies, State Defendants' Reply Memorandum in Support of Motion to Dismiss (Docket No.

---

[6] An additional case cited by the plaintiffs in this regard, *Macht v. Skinner*, 916 F.2d 13 (D.C. Cir. 1990), Opposition at 23, has been overruled on this issue by the District of Columbia Circuit, *Karst Environmental Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1296-98 (D.C. Cir. 2007).

[7] Were the Fifth Claim to go forward, it appears that Ballantyne Development LLC would be an indispensable party. *See, e.g., OneBeacon Am. Ins. Co. v. Elwell*, Civil No. 09-342-P-H, 2009 WL 4910056, at *1-*2 (D. Me. Dec. 13, 2009).

14) at 5, the plaintiffs proffer only 40 C.F.R. § 1506.1 in support of their contrary position, Plaintiffs' Surreply Memorandum in Opposition to the Defendants['] Motions to Dismiss (Docket No. 17) at 2-4. That regulation is entitled "Limitations on actions during NEPA process." Since the gravamen of the Fifth Claim is that no NEPA process took place with respect to the 2005 easement conveyance, Complaint ¶ 89, I fail to see how this regulation provides any of the relief sought by the plaintiffs. Even if the substance of the regulation is considered, none of it provides a basis for the specific relief sought that is not clearly a matter of state law. With respect to the state-law relief requested with respect to the conveyance of the 2005 easement, that relief would only be available under the Third Claim of the complaint, which is the only claim that alleges violation of Maine law.

Because none of the relief sought by the plaintiffs under NEPA in connection with the 2005 easement has been shown to be available under that statute, the state defendants are entitled to dismissal of the claims asserted against them in the Fifth Claim.

### D. Third Claim

Remaining for consideration is the complaint's Third Claim, which is asserted only against the state defendants. It alleges violation of state law by the granting of the 2005 easement and invalidity of a permit granted to Ballantyne Development LLC in 2007 by the Maine Department of Environmental Protection. Complaint ¶¶ 71-78. The state defendants ask this court to decline to exercise pendent jurisdiction over this claim, should the other claims be dismissed, as I have recommended. State Motion at 15. The plaintiffs do not respond to this argument, contending only that this court should exercise supplemental jurisdiction over the Third Claim because it has jurisdiction over their other claims. Opposition at 27-30.

In accordance with my recommendation that the court grant the defendants' motions to dismiss as to all of the federal claims asserted in the complaint, I recommend that the court decline to exercise jurisdiction over the state-law claims asserted in the Third Claim. *See Deep v. Boies*, 493 F.Supp.2d 88, 90 (D. Me. 2007).

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motions to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of February, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge